## Daniel Dreibilbis *v.* Peter B. Esbenshade, Appellant.

*Charge of the court—Biased and extravagant charge.*

It is reversible error for the court to import into its charge reference to matters which have no bearing on the case and to use extravagant expressions which tend unduly to inflame the minds of the jury.

*Charge of court—Erroneous construction of evidence.*

It is error for a trial judge to instruct the jury that alleged slander is proven by defendant's own admission when the testimony of the defendant denied the slander as laid and where his admissions were of a radically different statement.

It is error for a judge to assume more than is warranted by the testimony.

*Evidence—Slander—Hearsay—Irrelevant testimony.*

In an action for slander it is error to admit proof by plaintiff of what one of his witnesses had told him that defendant had said the same evening the alleged slanderous words had been uttered.


Argued Nov. 11, 1897. Appeal, No. 54, Oct. T., 1897, by defendant, from judgment of C. P. Lancaster Co., Jan. T., 1890, No. 67, on verdict for plaintiff. Before RICE, P. J., BEAVER, REEDER, ORLADY, SMITH and PORTER, JJ. Reversed.

Trespass for slander. Before LIVINGSTON, P. J.

It appears from the record that plaintiff's statement alleges the defamatory words to be in brief, "Daniel Dreibilbis is a thief; he stole; he is not honest." And the amended statement filed alleges the defamatory words to be, "I believe my turkeys are over there. I believe the tenant man took them. I believe I'll get a search warrant. I think I know where they are. I think they are in Hinardier's tenant house. I think I'll get a search warrant."

The court admitted, under objection, the plaintiff in the suit to be asked and to answer the following questions: [ "Q. Mr. Hinardier says he repeated to you at the time exactly what Mr. Esbenshade said? A. That same evening. Q. What did he tell you Mr. Esbenshade said?" Objected to by defendant. Admitted. Exception sealed. "Q. What did Mr. Hinardier say to you Mr. Esbenshade had said? A. When I came home Hinardier told me that Esbenshade was here hunting his turkeys.

Q. What did he tell you Esbenshade had said to him? A. He said he believes I got his turkeys, and he is going in to get a search warrant and search my house; he is pretty sure I got these turkeys." ] [1]

The court charged the jury as follows:

This is what is termed in law an action of slander. The words here charged are such words as the law requires to make an action actionable in itself; they charge larceny, an infamous crime with a severe punishment. [These words as laid are in themselves actionable, therefore. Now are they proven? I need scarcely say to you that if you believe the testimony of the defendant himself you cannot say they are not proven, because he tells you he did say about what is there; and, further than that, he went to a magistrate's office and signed a paper in which he charged this man, the defendant, with the larceny; had a search warrant prepared for him; searched his house (I think you will find from the evidence in his absence, the presence of his wife and child) found nothing and left. He was arrested himself, came here and had a hearing, and was discharged for want of evidence to sustain the charge made against him. So that in this case, according to the statements of the defendant himself, your verdict will have to be for the plaintiff for some amount; and the main question you will have to decide is what that amount shall be.] [2]

It is true that he has not produced any evidence to show that he has been driven out of society by this charge; that he has suffered any pecuniary loss for want of labor or want of a house to live in, or anything of that kind. If he had he would be entitled to exemplary or vindictive damages. As it is he is not. He is entitled to such damages as will dispossess his mind of this charge in this community; such damages as you or either of you (for there is no direct measure of fixing them) would ask a jury to give under circumstances such as he now labors under.

[This is a record made against him which will not down. The record is here, remains in this office, and always will show what the defendant here, Mr. Esbenshade, charged him with. And you will have to render such verdict as in your judgment will compensate him for the injury he had received in his reputation

by this charge.] [3] I cannot give you anything by which you can measure the damages otherwise than I have stated to you. There is no direct measure when there are no direct or independent damages proven. Where these are general, as in this case, the judge must judge from those, and their own better judgment, if they were in his place, what they would ask a jury to give. By doing so they will have complied with the requirements of the law and discharged their duty.

I don't know that I need say anything further to you in regard to the matter. You will have to take the papers and dis pose of the case under the law as I have stated it to you and in the manner I have stated to you.

Verdict and judgment for plaintiff for $250. Defendant appealed.

*Errors assigned* were (1) In allowing certain questions and answers from Samuel Dreibilbis, the plaintiff in this suit, to be asked and answered under exception, reciting same. (2, 3) To portions of the judge's charge, reciting same.

*J. C. Arnold*, for appellant.

*J. Hay Brown* and *W. U. Hensel*, for appellee.

OPINION by BEAVER, J., December 13, 1897 :

The action is slander. The plaintiff, being upon the witness stand and under examination, was asked, under objection and exception, what his own witness Hinardier, previously examined, had told him the defendant said the same evening the alleged slanderous words had been uttered. The purpose of this offer was not stated. We are at a loss to determine in what view of the case the evidence received under this offer was competent. It differed somewhat from the testimony of Hinardier himself but it could not have been offered for the purpose of contradicting him nor yet of corroborating him. Was it intended to be substantive proof of the slanderous words uttered by the defendant, as laid in the plaintiff's statement? If so, it was clearly incompetent. The mere fact that what the defendant said to Hinardier had been communicated to the plaintiff had been testified to both by Hinardier himself and by the plaintiff, without objection. That was as far as it was

proper to go.   The objection should have been sustained and the offer rejected.

The alleged slanderous words, as laid in the plaintiff's amended statement, are as follows : " I believe my turkeys are over there; I believe the tenant man took them; I believe I will get a search warrant; I think I know where they are ; I think they are in Hinardier's tenant house ; I think I will get a search warrant."   The testimony of the defendant, who was called by the plaintiff, as if under cross-examination, in regard to what he said as to the loss of his turkeys was as follows : " Q.  Did you say to him (Jacob Kohr) talking about Dreibilbis, ' I believe my turkeys are over there ? '   A.  I didn't mention no names.   Q.  Did you say ' I believe my turkeys are over there ? ' A.  I did, yes.   Q.  Did you say ' I believe the tenant man took them ? '   A.  Oh no, no, sir.   Q.  Did you say ' I believe I will get a search warrant ? '   A.  I did that.   Q.  ' I think I know where they are,' did you say that?   A.  No, I didn't say that. Q.  Did you say ' I think they are in Hinardier's tenant house ? ' A.  No."

It will be readily seen that the words as laid in the plaintiff's statement and those as testified to by the defendant are essentially and materially different, and yet in regard to them the court said : " These words as laid are in themselves actionable, therefore, now are they proven?   I need scarcely say to you that, if you believe the testimony of the defendant himself, you cannot say they are not proven, because he tells you he did say about what is there.   And further than that, he went to a magistrate's office and signed a paper in which he charged this man, the defendant, with the larceny, had a search warrant prepared for him, searched his house (I think you will find from the evidence in his absence, the presence of his wife and child) found nothing and left.   He was arrested himself, came here and had a hearing and was discharged for want of evidence to sustain the charge made against him, so that in this case, according to the statements of the defendant himself, your verdict will have to be for the plaintiff for some amount, and the main question you will have to decide is what that amount shall be."

In this there was substantial error.   The defendant emphatically denied having said " I believe the tenant man took them." " I think I know where they are."   " I think they are in Hin-

ardier's tenant house." If there is anything in the words laid in the plaintiff's statement which will support the innuendo, it is in the language above quoted. Certainly the testimony of the defendant did not prove them. What followed in regard to the search warrant and the subsequent proceedings thereon threw no light whatever upon the utterance of the slanderous words alleged to have been uttered and, therefore, the statements of the defendant did not warrant binding instructions as to the finding of a verdict for the plaintiff.

The trial judge in the court below charged the jury : " This is a record made against him and will not down. The record is here, remains in this office, and always will show what the defendant here, Mr. Esbenshade, charged him with, and you will have to render such a verdict as in your judgment will compensate him for the injury he has received in his reputation by this charge." What is the record referred to ? Was it the proceedings before the alderman upon which the search warrant was obtained ? Technically this was not a record, was not in the court and shows on its face that the charge had been dismissed and the defendant discharged. Was it the record of the action of slander then being tried ? The defendant was in no way responsible for that. That was a record for which the plaintiff alone was responsible and we fail to see, in any view of the case, why the language complained of should have been used as substantial ground upon which a verdict could be based.

The three assignments of error, upon which the defendant (the appellant here) relies, are all sustained, and the judgment is reversed and a new venire awarded.